**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DR. ALICE TZENG,<br><br>Plaintiff,<br><br>v.<br><br>CARE ONE AT MADISON AVENUE, LLC, and CARE ONE,LLC, Defendants | CASE NO.<br><br><br><br>**COMPLAINT** |

**INTRODUCTION**

1. New Jersey's largest private owner of nursing homes and assisted living facilities, Defendant Care One, LLC ("Care One"), mandated that all medical providers who treat patients at its facilities, inclusive of physicians, physicians' assistants and nurse practitioners, must receive Covid-19 vaccination or be banned from its facilities. Care One then abruptly enforced the ban against medical providers including the Plaintiffs who sought and were denied religious and medically based exemptions without explanation or any attempt at reasonable accommodation.

2. Plaintiff Alice Tzeng is a physician whose medical practice included patients at Care One facilities. Her religious and medically based objections to receiving the COVID-19 vaccine cost her a substantial portion of her medical practice through the loss of her right to treat patients at Care One facilities. Plaintiffs were abruptly terminated by Care One merely for seeking

religious and medically based exemptions to mandatory vaccination in violation of federal and state law.

3. Care One's mandatory vaccination policy violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act, and the New Jersey Law Against Discrimination, by failing to provide for, implement or properly and fairly administer a reasonable policy for granting religious and medical exemptions to the mandatory vaccination requirement.

4. Care One's Mandatory COVID-19 vaccination policy was far more extreme than anything currently authorized under federal law. In failing to provide for and properly administer religious and medically based exemptions or offer a reasonable testing and masking alternative, the Care One Mandate is extreme and unreasonable in both its design and in its application.

5. The Care One Mandate was significantly more extreme than the several vaccine Biden Administration mandates including the mandates promulgated by the Occupational Safety and Health Administration (the "OSHA Mandate") and the Center for Medicare and Medicaid Services ("CMS").

6. The OSHA Mandate requires all employees with 100 or more employees to "develop, implement, and enforce a mandatory vaccination policy."

7. Care One has refused to design, implement and publicize a formal policy with discernable criteria for considering and

granting religious and medically based exemptions. It has considered and denied exemption requests on a purely ad hoc basis, taking punitive action in the form of immediate termination against providers such as the Plaintiff while granting exemptions to a selected few for reasons neither stated nor evident. Care One not only denied Plaintiffs' request for religious exemptions without explanation and without any formal or informal review process, it terminated Plaintiff immediately and barred her from Care One facilities merely for having requested the exemption.

**THE PARTIES**

8. Plaintiff, Dr. Alice Tzeng, is a citizen of the State of Alabama residing at 29 Crimson Cloud, Hunstville Alabama, 35824. Dr. Tzeng is a physiatrist specializing in Physical Medicine and Rehabilitation. Dr. Tzeng has been practicing in subacute rehabilitation facilities since completing her residency in 2003. Dr. Tzeng's affiliation with Care One dates back to her work as a consultant with Care One Madison as a physiatrist in 2004 when the facility first opened. Dr. Tzeng was later recruited by Care One Madison and Care One Hanover in 2012 to treat patients at those facilities on a regular and full-time basis. Following maternity leave, Dr. Tzeng has treated patients at Care One Madison exclusively from 2013 until September 2021. Her engagement with Care One was terminated for seeking a religious-based exemption to mandatory vaccination for COVID-19.

9. Defendant Care One at Madison Avenue, LLC ("Care One Madison" or "Care One")is a limited liability company located 152 Madison Avenue Morristown, New Jersey that owns and operates an assisted living facility at the same address called Care One at Madison Avenue.

10. Defendant Care One, LLC (Care one when referred to collectively with Care One Madison) is a limited liability company located at 173 Bridge Street, Fort Lee, New Jersey 07024 and a corporate resident of the State. Upon information and belief, Care One, LLC is the parent company of or is otherwise affiliated with Care One Madison and other similar "Care One" entities throughout the state that own or operate branded continuing Care Retirement Communities and Assisted Living Facilities for the elderly.

11. Upon information and belief, Care One, LLC oversees and controls the policies and management decisions of Care One Madison and other similar entities.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 as this action arises from federal statutes as well as the United States Constitution. There is also diversity of citizenship pursuant to 28 U.S.C. 1332.

13. Venue properly resides in the District of New Jersey because the events and actions complained of in this action occurred within the State.

**STATEMENT OF FACTS**

14. According to a September 29, 2021 Memorandum from Care One's Chief Medical Officer addressed generically to medical providers at multiple Care One facilities terminated on that date for remaining unvaccinated, Care One mandated the COVID-19 vaccine well over a year ago on July 14, 2021.

15. Employees and medical professionals working at Care One facilities were not individually notified of the mandatory vaccination policy. Plaintiff, for example, learned of the mandatory vaccination policy from a colleague shortly before she was terminated on September 30, 2021, one day after requesting a religious-based exemption. Plaintiff's colleague became aware of Care One's mandatory vaccination policy from a notice posted employer notice. The colleague's religious based exemption application was granted by Care One and then denied a day later.

**A. Plaintiff's Application for Religious Exemption.**

16. The attached letter from Chief Medical Director, Dr. Ahmed, referred to in the email dated October 2, 2021, stated as follows:

October 2, 2021

> Dear Provider, As you are aware, CareOne mandated the COVID-19 vaccine on July 14, 2020, as evidence of our full commitment to safe-guard our communities against COVID-19. All providers who interact with our residents, including licensed physicians, nurse practitioners, physician assistants, and other medical providers were required to provide a copy of their vaccination card as proof of their fully vaccinated status no later than September 30, 2021. We provided ample time for everyone to become vaccinated. Nevertheless, our records show that you have not provided proof that you are fully vaccinated. This letter is to inform you that practitioners, like you, who have not provided proof of being fully vaccinated are no longer permitted entry into CareOne facilities to perform patient care duties. Please provide to your local administrator/executive director of the skilled nursing or assisted living facilities associated with your practice the name(s) and contact information for covering provider(s) as soon as possible. Thank you in advance for your cooperation and support in our efforts to safeguard our communities.
>
> Amina Ahmed MD, CareOne Chief Medical Officer

17. Plaintiff applied for a religious exemption to mandatory vaccination on the basis of her Christian faith and Christian doctrine on September 29, 2021 after learning from her colleague that it was the last day to apply for exemption and that her colleague's exemption application had been granted.

18. Prior to submitting that application, on September 24, 2021, Care One Marketing Director, Rikka Libatique contacted Plaintiff to request a copy of her vaccination card for the company's records. Plaintiff responded by requesting an in-person meeting the following week when she was scheduled to work. When Plaintiff reached out to Ms. Libatique for the planned face-to-

face meeting on September 29, 2021, the day she applied for exemption, Ms. Libatique responded that she was out sick and unavailable.

19. The next morning of September 30, 2021, Dr. Tzeng received an email from Ms. Libatique informing her that she was terminated effective immediately and making no mention of her exemption application. The email stated further that all of Dr. Tzeng's patients were being transferred immediately to another physiatrist because COVID-19 vaccination was required at all Care One facilities. The email directed Plaintiff to take steps to facilitate the transition of her patients.

20. Later on September 30, 2021, Plaintiff received another email from Ms. Libatique attaching Chief Medical Director, Dr. Ahmed's aforementioned September 29, 2021 Memorandum notifying all unvaccinated Care One providers that they were banned from the company's facilities.

21. Later that day, Plaintiff spoke with Care One Madison Administrator, Michael Shipley, who expressed his regrets, commenting that he was not aware Dr. Tzeng was unvaccinated and that it "was a shame" because the facility was happy with her work there.

22. When Plaintiff asked Mr. Shipley why she had not been properly notified of the mandatory vaccination policy and no one had either responded to her request for exemption or discussed the

request with her, Mr. Shipley replied that "it was all over the news" and that Dr. Tzeng "should have known" vaccination was required.

**B. The Vaccine Mandate Enforced Against Plaintiffs Did Not Allow for Religious or Medical Exemption.**

23. Based on Care One's actions against Plaintiff and Chief Medical Director, Dr. Ahmed's September 29, 2021 Memorandum to the company's medical providers, Care One adopted and enforced an absolute mandatory vaccination requirement against Plaintiff that did not allow for religious or medical exemptions. The Memorandum stated plainly that "[a]ll providers who interact with [Care One] residents...were required to provide a copy of their vaccination card as proof of their fully vaccinated status no later than September 30, 2021." Asserting that ample time had been provide for everyone to get vaccinated, the Memorandum informed medical professionals "who had not provided proof of being fully vaccinated" that they were "no longer permitted entry into Care One facilities to perform patient care duties."

24. As an absolute vaccination mandate in its application and enforcement against Plaintiff, Care One's mandate exceeds anything required or authorized under federal law.

**C. Care One's Mandate is More Extreme than the CMS Interim Final Rule**

25. On November 5, 2021 the Centers for Medicare and Medicaid Services ("CMS") issued an interim final rule with respect to

COVID-19 vaccination for workers in hospitals and healthcare systems that participate in Medicare and Medicaid programs. The CMS interim final rule established as a Condition of Participation, applying to Medicare and Medicare certified facilities and encompassing most health settings, that included most significantly a COVID-19 vaccination requirement with a deadline for compliance of January 4, 2022.

26. Significantly, the CMS interim rule expressly required healthcare facilities to allow for exemptions to staff with religious beliefs, observances or practices, or recognized medical conditions. Facilities were required to establish a process for staff to request both religious and medical exemptions and ensure that requests are appropriately documented and evaluated and approved where warranted.

27. The CMS interim rule required facilities specifically to provide for exemptions for staff with recognized medical conditions for which vaccines are contraindicated as well as for objections grounded on religious beliefs, observances or practices established under Title VII of the Civil Rights Act of 1964.

28. Under the CMS interim rule, where an unvaccinated staff member meets the requirements for an exemption, the facility was responsible for developing a process for implementing additional precautions to mitigate transmission and the spread of COVID-19.

Such conditions currently do not include required testing for unvaccinated staff.

29. Care One has done nothing remotely comparable or compliant with federal law in abruptly enforcing what amounts to a blanket ban on unvaccinated providers, as enforced against Plaintiffs. It failed to develop and implement a coherent policy for considering and granting exemptions. It failed to provide those affected with clear and timely notice. It failed to develop and uniformly apply lawful criteria in considering exemption applications. It granted exemptions to a few favored providers while summarily rejecting the applications of most providers in an arbitrary and capricious manner.

### D. Care One's Vaccine Mandate Was Neither Medically Sound Nor Justified by Readily Available Data.

30. Citing numerous studies tracking infection rates from literally millions of individuals, Dr. Jay Bhattacharya, a Professor of Medicine at Stanford University, has stated in public appearances as well as in sworn Declarations before federal courts, that natural immunity provides equivalent or greater protection against severe infection than immunity generated by COVID-19 vaccines. Dr. Dr. Peter McCullough, a prominent cardiologist, has also submitted sworn Declarations in various federal lawsuits stating that the COVID-19 vaccines do not prevent transmission of the disease among the vaccinated or mired vaccinated/unvaccinated

populations and that mandatory COVID-19 vaccines for hospitals do not increase safety for hospital or hospital patients.

31. Dr. Bhattacharya has further represented in sworn Declarations that while COVID-19 vaccines provide limited protection against infection but durable protection against severe outcomes if infected, natural immunity provides durable protection against both reinfection and severe outcomes if infected.

32. Dr. Bhattacharya has further stated in sworn Declarations that vaccine side effects, while rare, do occur and can be deadly. Such side effects include a heightened risk of clotting abnormalities in young women, elevated risks of myocarditis and pericarditis, particularly in young men, and a higher risk of Guillain-Barre syndrome among others. Dr. McCullough has similarly attested to side effects adversely affecting the heart.

33. As Dr. Bhattacharya has also attested, there were multiple safe alternatives to indefinite leave or termination available to employers. Employers could have adopted a robust sick policy, requiring healthcare workers who have not been vaccinated and who show symptoms consistent with COVID-19 infection to stay home from work and return only when they test negative for the virus. According to Dr. Bhattacharya, the evidence regarding transmission of COVID-19 shows that asymptomatic transmission of the disease is rare. Employers could

also simply exempt from the vaccination requirement all employees who legitimately claim an exemption, such as those that have recovered from COVID infection.

34. There is a growing scientific consensus that vaccination mandates are ineffective, counterproductive and have had a deleterious impact relative to the purported objectives underlying the mandates. As the Wall Street Journal reported on December 13, 2021, some of the largest hospital systems in the United States dropped COVID-19 mandates in the wake of federal court decisions enjoining the Biden Administration mandates. Other major corporations followed suit. Reportedly, as a result of the mandates, labor costs in the healthcare industry soared and hospitals struggled to retain nurses, technicians and even custodians. Thousands of nurses reportedly have either left the industry or lost their jobs rather than get vaccinated.

**FIRST COUNT**

**VIOLATION OF 42 U.S.C. §2000e-RELIGIOUS DISCRIMINATION IN FAILING TO ACCOMMODATE RELIGIOUS-BASED OBJECTIONS TO MANDATORY VACCINATION**

35. Plaintiff restates the foregoing paragraphs as if fully set forth herein.

36. Plaintiff held and holds sincere religious beliefs that preclude her from receiving a COVID-19 vaccine.

37. Plaintiffs informed Defendant Care One of those beliefs and requested a religious based exemption in accordance with Care One's announced or stated policy for mandatory vaccination.

38. Defendant Care One refused to engage interactively with Plaintiff. Defendants' limited interaction with Plaintiff was designed to deter her and others from exercising their religious beliefs or from seeking religious exemption.

39. Defendants failed to establish a reasonable policy for review and appeal of religious exemptions to mandatory vaccination. On information and belief, applications were reviewed and decisions were made on a purely ad hoc, and arbitrary and capricious basis.

40. Defendants failed to apply discernable or reasonable criteria to the denial of Plaintiff's exemption application.

41. Defendants failed to articulate any grounds, much less a compelling or legally cognizable justification for denying Plaintiffs' exemption application.

42. Defendants' denial of Plaintiff's application for religious exemption has yielded no discernable benefits while its effects have been deleterious.

43. Defendants' review and ultimate rejection of Plaintiff's exemption application was arbitrary and capricious.

44. Defendants' treatment of Plaintiff in connection with her exemption applications was also punitive.

45. Plaintiff's religious views in support of her exemption application were treated with open hostility and her application was ultimately denied, in part, as retribution for having expressed those views.

46. Plaintiff's medical practice has been significantly harmed, and she has sustained substantial financial losses. Her patients have been significantly harmed by being deprived of the Plaintiff's professional services and through the severance of their doctor-patient relationships with the Plaintiffs.

47. Care One failed to provide Plaintiffs with a "reasonable accommodation" to her religious beliefs as Plaintiff was permanently terminated from her positions and right to treat Care One patients. Care One thereby discriminated against Plaintiff illegally for her religious beliefs.

48. By failing to engage in an interactive process with Plaintiff, failing to fairly administer a reasonable and criteria-based process for considering and granting religious exemptions, Care One's discriminatory actions were intentional and/or reckless in violation of Title VII.

49. Plaintiff filed charge (Charge No. 524-2022-00371) with the Equal Employment Opportunity Commission ("EEOC") complaining of the improper and discriminatory actions set forth herein. She obtained a Right to Sue Letter from the EEOC attached as Exhibit A on March 3, 2023.

50. Plaintiff qualifies as an employee under Title VII under relevant legal standards applicable to individual and institutional medical providers because Defendants controlled and control her access to provide medical treatment to patients at Care One Madison and the manner and circumstances under which treatment was provided by her and other similar medical providers to Care One patients.

## SECOND COUNT

**VIOLATION OF TITLE VII, 2000e ET SEQ. RELIGIOUS DISCRIMINATION – RETALIATION FOR EXPRESSING RELIGIOUS-BASED OBJECTIONS TO MANDATORY VACCINATION AND FAITH-BASED DISCRIMINATION**

51. Plaintiff repeats the foregoing paragraphs as if fully set forth herein.

52. Plaintiff engaged in protected activity in requesting religious accommodations to Defendant's vaccine mandate.

53. Defendants responded almost immediately by announcing that it effectively was terminating Plaintiff's relationships with Care One and their access to patients residing at Care One facilities.

54. Care One's termination of Plaintiff was a draconian and punitive response to her request for religious exemption. Care One's decision to dispense with its previously announced policy for religious exemption was intended and had the effect of forcing

or coercing employees like Plaintiff to forego their religious beliefs and receive the COVID-19 vaccine.

55. When Defendant's improper questioning of Plaintiff's religious beliefs and other coercive measures failed to deter her from seeking exemption, Defendant retaliated by terminating Plaintiff and others similarly situated.

56. Defendants' termination of Plaintiff's employment and relationship with Care One, and her doctor-patient relationship with Care One residents, is an adverse employment action taken in retaliation for the Plaintiff's exercise of her religious beliefs.

57. Defendant's arbitrary, capricious and disparate treatment of the exemption request of Plaintiff and others similarly situated, granting exemptions to a selected few for unstated reasons while responding with open hostility to requests sincerely grounded in the Christian faith, constitutes faith-based discrimination.

## THIRD COUNT

**VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION N.J.S.A. 810:5-12(1)**

58. Plaintiff repeats the foregoing paragraphs as if fully set forth herein.

59. The New Jersey Law Against Discrimination ("NJLAD") prohibits discriminatory conduct such as the above-described conduct of Defendants.

60. It is unlawful under the NJLAD for any person to discriminate in employment or to refuse to buy or sell to or from or contract with any person on the basis of religious creed or disability.

61. By virtue of its afore-described actions in rejecting Plaintiffs' exemption applications and terminating their employment and/or contract relationship, Care One has violated the NJLAD.

62. Plaintiffs have been severely harmed in their business and profession by virtue of Care One's violation of the NJLAD.

63. Plaintiff's contractual or employment relationship with Defendants affords Plaintiff with standing and/or a right to sue under the NJLAD.

## FOURTH COUNT

### TORTIOUS INTERFERENCE WITH CONTRACT AND/OR PROSPECTIVE ECONOMIC ADVANTAGE

64. Plaintiff restates the foregoing allegations as if fully set forth herein.

65. Care One's afore-described actions against Plaintiff interfered with and severed Plaintiff's doctor-patient relationships with Care One patients, to the detriment of both Plaintiff and her patients.

66. Defendants' disregard for the Plaintiff's rights to religious and medical exemption, its retaliatory discharge and termination of Plaintiff without warning, and its abrupt severance of the doctor-patient relationship Plaintiffs had with Care One residents constitutes tortious interference with contract and/or tortious interference with prospective economic advantage.

67. By virtue of Defendants' tortious conduct, Plaintiff has been severely harmed in their business and profession and in the professional relationship with their patients.

**Fifth COUNT**

**BREACH OF CONTRACT**

68. Plaintiff restates the foregoing paragraphs as if fully set forth herein.

69. Plaintiff has contractual relationship with Defendants and corresponding contractual right to treat Care One residents.

70. Plaintiff relied on their contractual relationship with Care One in building medical practices centered around Care One residents.

71. Plaintiff had a contractual right and reliance-based and investment backed expectation to continue to treat patients at Care One facilities without unreasonable interference by Care One and free of unreasonable imposed conditions such as the vaccine mandate.

72. Defendants breached their contract with Plaintiffs and violated Plaintiff's contractual rights and frustrated her reasonable, reliance-based and investment-backed expectations in abruptly and summarily terminating Plaintiff based on her merely having applied for religious exemption.

73. Plaintiff has been substantially harmed by the Defendant's breach of contract and violation of her contractual rights.

**SIXTH COUNT**

**QUASI-CONTRACT**

74. Plaintiff repeats the foregoing paragraphs as if fully set forth herein.

75. Defendant's frustration of Plaintiff's investment-backed and reliance-based expectations gives rise to a cause of action in Quasi-Contract and under the corollary doctrine of equitable estoppel.

**SEVENTH COUNT**

**ACTION FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. 2201**

76. Plaintiff repeats the foregoing paragraphs as if fully set forth herein.

77. Plaintiffs have the right pursuant to 28 U.S.C. 2202 to a declaratory judgment or judgments declaring Care One to have

committed the various statutory violations and violations of the Plaintiffs' legal rights as alleged.

**PRAYER FOR RELIEF**

By way of relief, Plaintiff requests the Court

1. Declare that Defendants have violated Title VII by terminating Plaintiff and barring her from treating residents at Care One facilities.

2. Declare that Defendants violated Title VI by denying Plaintiff's exemption application.

3. Declare that Defendants have violated VII by failing to engage Plaintiff in an interactive process on their exemption requests, failing to consider and grant requests on a fair and rational basis and in accordance with reasonable prescribed standards and criteria.

4. Declare that Defendants have violated Title VII by discriminating against Plaintiff and others similarly situated in failing to provide reasonable accommodations to religious and medically based objections to mandatory vaccination, and by failing to offer and grant exemptions in a fair and non-arbitrary and capricious manner.

5. Declare that Defendants have violated Title VII and the by retaliating against Plaintiff and others similarly situated who engaged in protected activity.

6. Declare that Defendants have violated the New Jersey Law Against Discrimination through their various wrongful and discriminatory actions.

9. Awarding Plaintiff damages, including lost revenue and/or back pay, compensatory, consequential, exemplary and punitive damages and prejudgment and post-judgment interest.

10. Awarding Plaintiff reasonable attorney's fees and costs.

11. Granting Plaintiff such other relief as is just and equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issued.

Respectfully submitted,

HEROLD LAW, P.A.
Attorneys for Plaintiffs

Dated: June 1. 2023 By: /s/ Robert J. Donaher
Robert J. Donaher, Esq.